MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
ARMANDO VIDAL RAMIREZ, IGNACIO
ISRAEL CEDENO MINERO, DANIEL
GUERRERO, ESTEBAN MORALES, JORGE
ALBERTO JIMENEZ LOPEZ, JOSE JAVIER
RODRIGUEZ ROBLES (a/k/a JAVIER
RODRIGUEZ), JUAN COSME DURAN,
MISAEL MENDEZ, RAMIRO TORRES
SAENZ, RICARDO TRUJILLO, ROBERTO
VELASQUEZ RODRIGUEZ, TEODULO
MORENO, ELFEGO HERNANDEZ GOMEZ,
AGUSTIN MORALES, DAVID LUNA
PEREZ, EFRAIN ANTONIO, and
REGINALDO ANIBAL ROJAS *individually*
*and on behalf of others similarly situated,*

Plaintiffs,

-against-

ENERGY RESOURCES PERSONNEL LLC
(d/b/a DIG INN), PUMP 80 PINE LLC (d/b/a
DIG INN), 55TH STREET RESTAURANT
OPERATING, LLC (d/b/a DIG INN),  PUMP
17TH STREET LLC (d/b/a DIG INN), PUMP
HOLDINGS, LLC (d/b/a DIG INN), and
ADAM ESKIN,

Defendants.
------------------------------------------------------X

**COMPLAINT**

**RULE 23 CLASS ACTION and**
**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Armando Vidal Ramirez, Ignacio Israel Cedeno Minero, Daniel Guerrero,

Esteban Morales, Jorge Alberto Jimenez Lopez, Jose Javier Rodriguez Robles (a/k/a Javier

Rodriguez), Juan Cosme Duran, Misael Mendez, Ramiro Torres Saenz, Ricardo Trujillo,  Roberto

Velasquez Rodriguez, Teodulo Moreno, Elfego Hernandez Gomez, Agustin Morales, David Luna

Perez, Efrain Antonio, and Reginaldo Anibal Rojas individually and on behalf of others similarly situated (collectively the "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Energy Resources Personnel LLC (d/b/a Dig Inn), Pump 80 Pine LLC (d/b/a Dig Inn), 55th Street Restaurant Operating, LLC (d/b/a Dig Inn), Pump 17th street LLC (d/b/a Dig Inn), Pump Holdings, LLC (d/b/a Dig Inn), ("Defendant Corporations"), and Adam Eskin, (collectively "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are current and former employees of Defendants Energy Resources Personnel LLC (d/b/a Dig Inn), Pump 80 Pine LLC (d/b/a Dig Inn), 55th Street Restaurant Operating, LLC (d/b/a Dig Inn), Pump 17th street LLC (d/b/a Dig Inn), Pump Holdings, LLC (d/b/a Dig Inn), and Adam Eskin.

2.       Defendants own, operate, and/or control a chain of health food restaurants, three of which are located at 80 Pine Street, New York, New York 10005 (hereinafter "the Pine Street location"), at 17 East 17th Street, New York, NY, 10003 (hereinafter "the 17th street location") and 40 West 55th Street, New York, New York 10019 (hereinafter, "the 55th Street location") respectively.

3.      Upon information and belief, individual Defendant Adam Eskin serves or served as owner, manager, principal or agent of Defendants Energy Resources Personnel LLC, Pump 80 Pine LLC, 55th Street Restaurant Operating, LLC, Pump 17th street LLC (d/b/a Dig Inn) and Pump Holdings, LLC ("Defendant Corporations"), and through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs are current and former employees of Defendants. They were primarily employed as delivery workers, but they were required to spend a considerable part of their workday

performing non-tipped, non-delivery work, including various restaurant duties such as sweeping and mopping, throwing out the garbage, deconstructing boxes, putting away chairs, cutting lemons, stocking sodas and chips, preparing sauces, filling up sauce containers, wrapping utensils, bringing vegetables from one store to the other, cleaning tables and the bathroom, and dishwashing (hereinafter "non-tipped non-delivery duties").

5.     At all times relevant to this Complaint, Plaintiffs have worked for Defendants without appropriate minimum wage, overtime and spread of hour's compensation for the hours per week that they have worked.

6.     Rather, Defendants have failed to maintain accurate recordkeeping of their hours worked, and have failed to pay Plaintiffs appropriately for any hours worked, at the straight rate of pay or for any additional overtime premium.

7.     Further, Defendants have failed to pay Plaintiffs the required "spread of hours" pay for any day in which they have worked over 10 hours per day.

8.     Defendants have employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality Plaintiffs' duties have required a significant amount of time spent in non-tip, non-delivery duties.

9.     Regardless, at all times Defendants have paid Plaintiffs at the tip-credit rate. Furthermore, under state law, Defendants are not entitled to take a tip credit because Plaintiffs' non-tipped duties have exceeded 20% of each workday (12 N.Y.C.R.R. §146).

10.     Under state law, Defendants are not entitled to take a tip credit because Plaintiffs' non-tipped non-delivery duties exceed 20% of each workday.  12 N.Y.C.R.R. § 146-2.9.

11.     Upon information and belief, Defendants have employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum

wage rate and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them as delivery workers instead of non-tipped employees.

12.     Defendants' conduct extends beyond Plaintiffs to all other similarly situated employees.

13.     At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

14.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

15.     Plaintiffs now bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure and seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate or operated three restaurants located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

18.     Plaintiff Armando Vidal Ramirez ("Plaintiff Vidal" or "Mr. Vidal") is an adult individual residing in Bronx County, New York. Plaintiff Vidal was employed by Defendants from approximately March 7, 2013 until on or about September 2017. During the course of his employment, Plaintiff Vidal worked at Defendants' Pine Street location.

19.     Plaintiff Ignacio Israel Cedeno Minero ("Plaintiff Minero" or "Mr. Minero") is an adult individual residing in Bronx County, New York. Plaintiff Minero was employed by Defendants from approximately September 2012 until on or about September 28, 2017. During the course of his employment, Plaintiff Minero worked at Defendants' Pine Street location.

20.     Plaintiff Daniel Guerrero ("Plaintiff Guerrero" or "Mr. Guerrero") is an adult individual residing in Bronx County, New York. Plaintiff Guerrero was employed by Defendants from approximately February 2012 until on or about September 17, 2017. During the course of his employment, Plaintiff Guerrero worked at Defendants' Pine Street location.

21.     Plaintiff Esteban Morales ("Plaintiff Morales" or "Mr. Morales") is an adult individual residing in New York County, New York. Plaintiff Morales was employed by Defendants from approximately January 2014 until on or about September 2017. During the course of his employment, Plaintiff Morales worked at Defendants' Pine Street location.

22.     Plaintiff Jorge Alberto Jimenez Lopez ("Plaintiff Alberto" or "Mr. Alberto") is an adult individual residing in Kings County, New York.  Plaintiff Alberto was employed by Defendants from approximately October 2014 until on or about September 2017. During the course of his employment, Plaintiff Alberto was employed at Defendants' Pine Street location.

23.     Plaintiff Jose Javier Rodriguez Robles (a/k/a Javier Rodriguez) ("Plaintiff Rodriguez") or ("Mr. Rodriguez") is an adult individual residing in Bronx County, New York. Plaintiff Rodriguez was employed by Defendants from approximately July 2011 until on or about February 13, 2015. During the course of his employment, Plaintiff Rodriguez was employed at Defendants' Pine Street location.

24.     Plaintiff Juan Cosme Duran ("Plaintiff Duran") or ("Mr. Duran") is an adult individual residing in Queens County, New York. Plaintiff Duran was employed by Defendants from approximately June 2010 until on or about September 14, 2017. During the course of his employment, Plaintiff Duran was employed at Defendants' Pine Street location.

25.     Plaintiff Misael Mendez ("Plaintiff Mendez") or "Mr. Mendez") is an adult individual residing in Kings County, New York. Plaintiff Mendez was employed by Defendants from approximately October 2013 until on or about December 2015. During the course of his employment, Plaintiff Mendez was employed at Defendants' Pine Street location.

26.     Plaintiff Ramiro Torres Saenz ("Plaintiff Torres" or "Mr. Torres") is an adult individual residing in Queens County, New York.  Plaintiff Torres was employed by Defendants from approximately March 2013 until on or about September 2017. During the course of his employment, Plaintiff Torres was employed at Defendants' Pine Street location.

27.     Plaintiff Ricardo Trujillo ("Plaintiff Trujillo") or ("Mr. Trujillo") is an adult individual residing in Kings County, New York. Plaintiff Trujillo was employed by Defendants

from approximately December 2013 until on or about June 2014. During the course of his employment, Plaintiff Trujillo was employed at Defendants' Pine Street location.

28.     Plaintiff Roberto Velasquez Rodriguez ("Plaintiff Velasquez") or "Mr. Velasquez") is an adult individual residing in New York County, New York. Plaintiff Velasquez was employed by Defendants from approximately June 2012 until on or about March 2013. During the course of his employment, Plaintiff Velasquez was employed at Defendants' 55th Street location.

29.     Plaintiff Teodulo Moreno ("Plaintiff Moreno") or ("Mr. Moreno") is an adult individual residing in Queens County, New York. Plaintiff Moreno was employed by Defendants from approximately May 2011 until on or about August 2014. During the course of his employment, Plaintiff Moreno was employed at Defendants' Pine Street location.

30.     Plaintiff Elfego Hernandez Gomez ("Plaintiff Hernandez") or ("Mr. Hernandez") is an adult individual residing in Bronx County, New York. Plaintiff Hernandez has been employed by Defendants from approximately October 2015 until the present date. During the course of his employment, Plaintiff Hernandez has been employed at Defendants' 17th Street location.

31.     Plaintiff Agustin Morales ("Plaintiff Agustin") or (Mr. Agustin") is an adult individual residing in Queens County, New York. Plaintiff Agustin was employed by Defendants from approximately September 2012 until on or about February 2017. During the course of his employment, Plaintiff Morales was employed at Defendants' 17th Street location.

32.     Plaintiff David Luna Perez ("Plaintiff Luna") or (Mr. Luna") is an adult individual residing in Kings County, New York. Plaintiff Luna was employed by Defendants from approximately October 2012 until on or about September 2017. During the course of his employment, Plaintiff Luna was employed at Defendants' 17th Street location.

33.     Plaintiff Efrain Antonio ("Plaintiff Antonio") or ("Mr. Antonio") is an adult individual residing in New York County, New York. Plaintiff Antonio has been employed by Defendants from approximately July 2012 until the present date. During the course of his employment, Plaintiff Antonio has been employed at Defendants' 17th Street location.

34.     Plaintiff Reginaldo Anibal Rojas ("Plaintiff Anibal") or ("Mr. Anibal") is an adult individual residing in Bronx County, New York. Plaintiff Anibal was employed by Defendants from approximately August 2016 until on or about March 13, 2018. During the course of his employment, Plaintiff Anibal was employed at Defendants' 17th Street location.

*Defendants*

35.     At all relevant times, Defendants own, operate, and/or control a chain of health food restaurants two of which are located at 80 Pine Street, New York, New York 10005, 17 East 17th Street, New York, NY, 10003 and 40 West 55th Street, New York, New York 10019.

36.     Upon information and belief, Energy Resources Personnel LLC (d/b/a Dig Inn) is a domestic corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintains its principal place of business at 80 Pine Street, New York, New York 10005.

37.     Upon information and belief, Pump 80 Pine LLC (d/b/a Dig Inn) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 80 Pine Street, New York, New York 10005.

38.     Upon information and belief, 55th Street Restaurant Operating, LLC (d/b/a Dig Inn) is a domestic corporation organized and existing under the laws of the State of New York. Upon

information and belief, it maintained its principal place of business at 40 West 55th Street, New York, New York 10019.

39.     Upon information and belief, Pump 17th street LLC (d/b/a Dig Inn) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 17 East 17th Street, New York, NY, 10003.

40.     Upon information and belief, Pump Holdings, LLC (d/b/a Dig Inn) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 40 West 55th Street, New York, New York 10019.

41.     Defendant Adam Eskin is an individual engaging in business in this judicial district during the relevant time period.  Defendant Adam Eskin is sued individually in his capacity as an owner, officer and/or agent of Defendant corporations. He possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

42.     Defendants own, operate, and/or control a chain of health food restaurants located at multiple locations in New York, including at 80 Pine Street, New York, New York 10005, at 17 East 17th Street, New York, NY, 10003 and at 40 West 55th Street, New York, New York 10019.

43.    Individual Defendant, Adam Eskin possesses substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

44.    Defendants employ Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

45.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

46.    Upon information and belief, Individual Defendant Adam Eskin operates Defendant Corporations as either alter egos of himself, and/or fails to operate Defendant Corporations as entities legally separate and apart from himself, by among other things:

a.    failing to adhere to the corporate formalities necessary to operate Defendant Corporations as corporations;

b.    defectively forming or maintaining the Defendant Corporations, by amongst other things, failing to hold annual meetings or maintaining appropriate corporate records;

c.    transferring assets and debts freely as between all Defendants;

d.    operating Defendant Corporations for his own benefit as the sole or majority shareholder;

e.    operating Defendant Corporations for his own benefit and maintaining control over them as closed corporations;

f.    intermingling assets and debts of his own with Defendant Corporations;

- 10 -

g.     diminishing and/or transferring assets to avoid full liability as necessary to protect his own interests, and

h.     other actions evincing a failure to adhere to the corporate form.

47.     At all relevant times, Defendants have been Plaintiffs' employer within the meaning of the FLSA and New York Labor Law. Defendants have the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

48.     In each year from 2012 to 2018, Defendants, both separately and jointly, have had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

49.     In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce.  As an example, numerous items that are used in the restaurants on a daily basis are goods produced outside of the State of New York.

### Individual Plaintiffs

50.     Plaintiffs are present and former employees of Defendants ostensibly employed as delivery workers. However, Plaintiffs also have been required to perform the non-delivery non-tip duties described above.

51.     They seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### Plaintiff Armando Vidal Ramirez

52.     Plaintiff Vidal was employed by Defendants from approximately March 7, 2013 until on or about September 2017.

53.     Defendants ostensibly employed Plaintiff Vidal as a delivery worker. However, at all relevant times, Plaintiff Vidal was required to perform the non-delivery non-tip duties described above.

54.     Although Plaintiff Vidal ostensibly employed as a delivery worker, at all relevant times, he spent over 20% of every work day performing non-delivery work.

55.     Plaintiff Vidal regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

56.     Plaintiff Vidal's work duties required neither discretion nor independent judgment.

57.     From approximately March 7, 2013 until on or about July 2015, Plaintiff Vidal worked at the Pine Street location from approximately 6:00 p.m. until on or about 10:15 to 10:20 p.m. Mondays to Fridays (typically 21.25 to 21.65 hours per week).

58.     From approximately July 2015 until on or about March 2017, Plaintiff Vidal worked at the Pine Street location for an average of approximately 11 to 12 hours per week.

59.     From approximately March 2017 until on or about September 2017, Plaintiff Vidal worked at the Pine Street location from approximately 6:00 p.m. until on or about 9:00 p.m. Thursdays and Fridays (typically 6 hours per week).

60.     Plaintiff Vidal was paid his wages by check.

61.     From approximately March 7, 2013 until on or about December 2013, Defendants paid Plaintiff Vidal $5.00 per hour.

62.     From approximately January 2014 until on or about December 2015, Defendants paid Plaintiff Vidal $5.65 per hour.

63.     From approximately January 2016 until on or about September 2017, Defendants have paid Plaintiff Vidal $7.50 per hour.

64.  Defendants never granted Plaintiff Vidal a meal break or rest period of any kind.

65.  Plaintiff Vidal was never notified by Defendants that his tips were being included as an offset for wages.

66.  Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Vidal's wages.

67.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Vidal regarding wages under the FLSA and NYLL.

68.  Defendants never gave any notice to Plaintiff Vidal in English and in Spanish (Plaintiff Vidal's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

69.  Defendants required Plaintiff Vidal to purchase "tools of the trade" with his own funds—including four bicycles, one basket, new tires, a helmet, a lock, and a set of lights.

*Plaintiff Ignacio Israel Cedeno Minero*

70.  Plaintiff Minero was employed by Defendants from approximately September 2012 until on or about September 28, 2017.

71.  Defendants ostensibly employed Plaintiff Minero as a delivery worker.  However, Plaintiff Minero also was required to perform the non-delivery non-tip duties described above.

72.  Although Plaintiff Minero ostensibly was employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

73.  Plaintiff Minero regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

74.     Plaintiff Minero's work duties required neither discretion nor independent judgment.

75.     From approximately September 2012 until on or about September 28, 2017, Plaintiff Minero worked at the Pine Street location from approximately 6:00 p.m. until on or about 10:30 p.m. three days a week, from approximately 6:00 p.m. until on or about 10:00 p.m. one day a week, and from approximately 11:00 a.m. until on or about 10:00 p.m. one day a week (typically 28.5 hours per week).

76.     Throughout his employment with Defendants, Plaintiff Minero was paid his wages by check.

77.     From approximately September 2012 until on or about December 2013, defendants paid Plaintiff Minero $5.00 per hour.

78.     From approximately January 2014 until on or about December 2015, defendants paid Plaintiff Minero $5.65 per hour.

79.     From approximately January 2016 until on or about June 2017, defendantgs paid Plaintiff Minero $7.50 per hour.

80.     From approximately June 2017 until on or about September 28, 2017, defendants paid Plaintiff Minero $9.00 per hour.

81.     Defendants never granted Plaintiff Minero a meal break or rest period of any kind.

82.     Plaintiff Minero was never notified by Defendants that his tips were being included as an offset for wages.

83.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Minero's wages.

84.     No notification, either in the form of posted notices or other means, was ever given

to Plaintiff Minero regarding wages under the FLSA and NYLL.

85.    Defendants did not give any notice to Plaintiff Minero, in English and in Spanish (Plaintiff Minero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

86.    Defendants required Plaintiff Minero to purchase "tools of the trade" with his own funds—including three bicycles, two helmets, and maintenance every three months.

*Plaintiff Daniel Guerrero*

87.    Plaintiff Guerrero was employed by Defendants from approximately February 2012 until on or about September 17, 2017.

88.    Defendants ostensibly employed Plaintiff Guerrero as a delivery worker.  However, Plaintiff Guerrero was required to perform the non-delivery non-tip duties described above.

89.    Although Plaintiff Guerrero ostensibly was employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

90.    Plaintiff Guerrero regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

91.    Plaintiff Guerrero's work duties required neither discretion nor independent judgment.

92.    From approximately February 2012 until on or about July 2015, Plaintiff Guerrero worked from approximately 5:00 p.m. until on or about 10:00 p.m. Monday to Thursday and either Friday or Saturday (typically 25 hours per week).

93.     From approximately July 2015 until on or about February 2017, Plaintiff Guerrero worked from approximately 5:00 p.m. until on or about 9:00 p.m. Monday to Thursday (typically 16 hours per week).

94.     From approximately February 2017 until on or about September 2017, Plaintiff Guerrero worked from approximately 6:00 p.m. until on or about 9:00 p.m. Monday to Thursday (typically 12 hours per week).

95.     Throughout his employment with Defendants, Plaintiff Guerrero was paid his wages by check.

96.     From approximately April 2012 until on or about June 2013, defendants paid Plaintiff Guerrero at a rate of either $5.00 per hour for approximately 20 hours or at $8.00 per hour for approximately 5 hours.

97.     From approximately June 2013 until on or about December 2014, defendants paid Plaintiff Guerrero at a rate of either $5.65 per hour for approximately 20 hours or at $8.00 per hour for approximately 5 hours.

98.     From approximately January 2015 until on or about July 2015, defendants paid Plaintiff Guerrero at a rate of either $5.65 per hour for approximately 20 hours or at $8.75 per hour for approximately 5 hours.

99.     From approximately July 2015 until on or about January 2016, Defendants paid Plaintiff Guerrero $5.65 per hour.

100.    From approximately February 2016 until September 2017, Defendants paid Plaintiff Guerrero $7.50 per hour.

101.    Defendants never granted Plaintiff Guerrero a meal break or rest period of any kind.

102.    Defendants never notified Plaintiff Guerrero that his tips were being included as an offset for wages.

103.    Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Guerrero's wages.

104.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Guerrero regarding wages under the FLSA and NYLL.

105.    Defendants never gave any notice to Plaintiff Guerrero in English and in Spanish (Plaintiff Guerrero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

106.    Defendants required Plaintiff Guerrero to purchase "tools of the trade" with his own funds—including four bicycles, two helmets, a chain and lock, lights, and bike maintenance.

*Plaintiff Esteban Morales*

107.    Plaintiff Morales was employed by Defendants from approximately January 2014 until on or about September 2017.

108.    Defendants ostensibly employed Plaintiff Morales as a delivery worker. However, Plaintiff Morales was also required to perform the non-delivery non-tip duties described above.

109.    Although Plaintiff Morales ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

110.    Plaintiff Morales regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

111.    Plaintiff Morales' work duties required neither discretion nor independent judgment.

112.     From approximately January 2014 until on or about September 2017, Plaintiff Morales worked from approximately 5:00 p.m. until on or about 9:00 p.m. to 9:30 p.m. Mondays to Thursdays and from approximately 11:00 a.m. until on or about 9:00 p.m. to 9:15 p.m. on Saturdays (typically 26 to 28.25 hours per week).

113.     Throughout his employment with Defendants, Plaintiff Morales was paid his wages by check.

114.     From approximately August 2014 until on or about December 2014, defendants paid Plaintiff Morales at a rate of either $5.65 for approximately 15 hours per hour or $8.00 per hour for approximately 5 hours.

115.     From approximately January 2015 until on or about December 2015, defendants paid Plaintiff Morales at a rate of either $5.65 per hour for approximately 15 hours or $8.75 per hour for approximately 5 hours.

116.     From approximately January 2016 until on or about September 2017, defendants paid Plaintiff Morales $7.50 per hour.

117.     Defendants never granted Plaintiff Morales a meal break or rest period of any kind.

118.     Plaintiff Morales was never notified by Defendants that his tips were being included as an offset for wages.

119.     Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Morales's wages.

120.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Morales regarding wages under the FLSA and NYLL.

121.     Defendants never gave any notice to Plaintiff Morales, in English and in Spanish (Plaintiff Morales's primary language), of his rate of pay, employer's regular pay day, and such

other information as required by NYLL §195(1).

122.    Defendants required Plaintiff Morales to purchase "tools of the trade" with his own funds—including three bicycles and bike maintenance.

*Plaintiff Jorge Alberto Jimenez Lopez*

123.    Plaintiff Alberto was employed by Defendants from approximately October 2014 until on or about September 2017.

124.    Defendants ostensibly employed Plaintiff Alberto as a delivery worker. However, Plaintiff Alberto was also required to perform the non-delivery non-tip duties described above.

125.    Although Plaintiff Alberto ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

126.    Plaintiff Alberto regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

127.    Plaintiff Alberto's work duties required neither discretion nor independent judgment.

128.    From approximately October 2014 until on or about April 2015, Plaintiff Alberto worked from approximately 5:00 p.m. until on or about 10:00 p.m. to 10:15 p.m. Mondays to Thursdays and Saturdays (typically 25 to 26.25 hours per week).

129.    From approximately April 2015 until on or about May 2017, Plaintiff Alberto worked from approximately 4:00 p.m. until on or about 10:00 p.m. to 10:15 p.m. Mondays to Thursdays and from approximately 11:00 a.m. until on or about 9:30 p.m. on Sundays (typically 34.5 to 35.5 hours per week).

130.    From approximately May 2017 until on or about September 2017, Plaintiff Alberto worked from approximately 4:00 p.m. until on or about 10:00 p.m. to 10:15 p.m. Mondays to

Thursdays and from approximately 11:00 a.m. to 11:30 a.m. until on or about 9:30 p.m. on Sundays (typically 33.5 to 34 hours per week).

131.    Plaintiff Alberto was paid his wages by check.

132.    From approximately October 2014 until on or about December 2015, defendants paid Plaintiff Alberto $5.65 per hour for approximately 20 hours and $8.75 per hour for approximately 5 hours.

133.    From approximately January 2016 until September 2017, defendants paid Plaintiff Alberto $7.50 per hour.

134.    Defendants never granted Plaintiff Alberto a meal break or rest period of any kind.

135.    Plaintiff Alberto was never notified by Defendants that his tips were being included as an offset for wages.

136.    Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Alberto's wages.

137.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Alberto regarding wages under the FLSA and NYLL.

138.    Defendants never gave any notice to Plaintiff Alberto in English and in Spanish (Plaintiff Alberto's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

139.    Defendants required Plaintiff Alberto to purchase "tools of the trade" with his own funds—including two bicycles, bike supplies, and maintenance.

*Plaintiff Jose Javier Rodriguez Robles (a/k/a Javier Rodriguez)*

140.    Plaintiff Rodriguez was employed by Defendants from approximately July 2011 until on or about February 13, 2015.

141.    Defendants ostensibly employed Plaintiff Rodriguez as a delivery worker and a dishwasher.

142.    Plaintiff Rodriguez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

143.    Plaintiff Rodriguez's work duties required neither discretion nor independent judgment.

144.    From approximately April 2012 until on or about October 2014, Plaintiff Rodriguez worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays to Fridays and from approximately 11:00 a.m. until on or about 9:30 p.m. on Sundays (typically 30.5 hours per week).

145.    From approximately October 2014 until on or about February 13, 2015, Plaintiff Rodriguez worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays to Fridays (typically 20 hours per week).

146.    Throughout his employment with Defendants, Plaintiff Rodriguez was paid his wages by check.

147.    From approximately April 2012 until on or about June 2013, Defendants paid Plaintiff Rodriguez $5.00 per hour for approximately 20 hours and $8.00 per hour for approximately 5 hours.

148.    From approximately June 2013 until on or about September 2014, Defendants paid Plaintiff Rodriguez $5.65 per hour for approximately 20 hours and $8.00 per hour for approximately 10 hours.

149.    For approximately the month of October 2014, Defendants paid Plaintiff Rodriguez $8.00 per hour for approximately 20 hours worked.

150.     From approximately November 2014 until on or about February 13, 2015, Defendants paid Plaintiff Rodriguez $5.65 per hour.

151.     Defendants never granted Plaintiff Rodriguez a meal break or rest period of any kind.

152.     Plaintiff Rodriguez was never notified by Defendants that his tips were being included as an offset for wages.

153.     Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Rodriguez's wages.

154.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rodriguez regarding wages under the FLSA and NYLL.

155.     Defendants never gave any notice to Plaintiff Rodriguez in English and in Spanish (Plaintiff Rodriguez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Juan Cosme Duran*

156.     Plaintiff Duran was employed by Defendants from approximately June 2010 until on or about May 2013 and from approximately November 2016 until on or about September 14, 2017.

157.     Defendants ostensibly employed Plaintiff Duran as a delivery worker. However, Plaintiff Duran also was required to perform the non-delivery non-tip duties described above.

158.     Although Plaintiff Duran ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

159.     Plaintiff Duran regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

160.    Plaintiff Duran's work duties required neither discretion nor independent judgment.

161.    From approximately September 2011 until on or about May 2013, Plaintiff Duran worked from approximately 5:00 p.m. until on or about 9:00 p.m. Mondays to Fridays (typically 20 hours per week).

162.    From approximately November 2016 until on or about June 2017, Plaintiff Duran worked from approximately 11:00 a.m. until on or about 2:00 p.m. Sundays through Thursdays (typically 20 hours per week).

163.    From approximately July 2017 until on or about September 14, 2017, Plaintiff Duran worked from approximately 11:00 a.m. until on or about 2:00 p.m. Mondays, Tuesdays, and Thursdays (typically 9 hours per week).

164.    Plaintiff Duran was paid his wages by check.

165.    From approximately November 2011 until on or about May 2013, defendants paid Plaintiff Duran $5.00 per hour.

166.    From approximately November 2016 until on or about September 14, 2017, defendants paid Plaintiff Duran $7.50 per hour.

167.    Defendants never granted Plaintiff Duran a meal break or rest period of any kind.

168.    Plaintiff Duran was never notified by Defendants that his tips would be included as an offset for wages.

169.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Duran's wages.

170.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Duran regarding wages under the FLSA and NYLL.

171.    Defendants did not give any notice to Plaintiff Duran in English and in Spanish

(Plaintiff Duran's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

172.    Defendants required Plaintiff Duran to purchase "tools of the trade" with his own funds—including one bicycle and maintenance.

*Plaintiff Misael Mendez*

173.    Plaintiff Mendez was employed by Defendants from approximately October 2013 until on or about December 2015.

174.    Defendants ostensibly employed Plaintiff Mendez as a delivery worker. However, Plaintiff Mendez also was required to perform the non-delivery non-tip duties described above.

175.    Although Plaintiff Mendez ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

176.    Plaintiff Mendez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

177.     Plaintiff Mendez's work duties required neither discretion nor independent judgment.

178.    From approximately October 2013 until on or about December 2015, Plaintiff Mendez worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays to Fridays and from approximately 11:00 a.m. until on or about 9:00 p.m.  on Sundays (typically 30 hours per week).

179.    Throughout his employment with Defendants, Plaintiff Mendez was paid his wages by check.

180.    From approximately October 2013 until on or about December 2014, defendants paid Plaintiff Mendez $5.65 per hour for approximately 20 hours and $8.00 per hour for

approximately 5 hours.

181.    From approximately January 2015 until on or about October 2015, defendants paid Plaintiff Mendez $5.65 per hour for approximately 20 hours and $8.75 per hour for approximately 5 hours.

182.    From approximately October 2015 until on or about December 2015, defendants paid Plaintiff Mendez $7.50 per hour.

183.    Defendants never granted Plaintiff Mendez meal or break periods of any kind during his work hours.

184.    Plaintiff Mendez was never notified by Defendants that his tips would be included as an offset for wages.

185.    Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Mendez's wages.

186.    Defendants never provided Plaintiff Mendez with a written notice, in English and in Spanish (Plaintiff Mendez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

187.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mendez regarding overtime and wages under the FLSA and NYLL.

188.    Defendants required Plaintiff Mendez to purchase "tools of the trade" with his own funds—including two bicycles, one helmet, five lights a year, and bicycle maintenance.

*Plaintiff Ramiro Torres Saenz*

189.    Plaintiff Torres has been employed by Defendants from approximately March 2013 until the present date.

190.    Defendants ostensibly have employed Plaintiff Torres as a delivery worker.

However, Plaintiff Torres also has been required to perform the non-delivery non-tip duties described above.

191.    Although Plaintiff Torres ostensibly has been employed as a delivery worker, he has spent over 20% of every work day performing non-delivery work.

192.    Plaintiff Torres regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

193.    Plaintiff Torres' work duties have required neither discretion nor independent judgment.

194.    From approximately March 2013 until on or about October 2016, Plaintiff Torres worked from approximately 10:00 a.m. until on or about 3:00 p.m. Mondays to Saturdays (typically 30 hours per week).

195.    From approximately November 2016 until the present date, Plaintiff Torres has worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays to Fridays (typically 25 hours per week).

196.    Throughout his employment with Defendants, Plaintiff Torres has been paid his wages by check.

197.    From approximately March 2013 until on or about December 2013, defendants paid Plaintiff Torres $5.00 per hour.

198.    From approximately January 2014 until on or about December 2015, defendants paid Plaintiff Torres $5.65 per hour.

199.    From approximately January 2016 until December 2017, Defendants paid Plaintiff Torres $7.50 per hour.

200.    From approximately January 2018 until the present date, Defendants paid Plaintiff Torres $9.00 per hour.

201.    However, Defendants have required Plaintiff Torres to sign a wage notice stating he was getting paid the minimum wage rate even though he wasn't.

202.    Defendants never have granted Plaintiff Torres a meal break or rest period of any kind.

203.    Plaintiff Torres never has been notified by Defendants that his tips are being included as an offset for wages.

204.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Torres' wages.

205.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Torres regarding wages under the FLSA and NYLL.

206.    Defendants have not given any notice to Plaintiff Torres in English and in Spanish (Plaintiff Torres' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

207.    Defendants have required Plaintiff Torres to purchase "tools of the trade" with his own funds—including two bicycles, two helmets, fifteen pairs of tires, and two sets of chains and locks.

*Plaintiff Ricardo Trujillo*

208.    Plaintiff Trujillo was employed by Defendants from approximately December 2013 until on or about June 2014.

209.    Defendants ostensibly employed Plaintiff Trujillo as a delivery worker. However, Plaintiff Trujillo also was required to perform the non-delivery non-tip duties described above.

210.     Although Plaintiff Trujillo ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

211.     Plaintiff Trujillo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

212.      Plaintiff Trujillo's work duties required neither discretion nor independent judgment.

213.     From approximately December 2013 until on or about June 2014, Plaintiff Trujillo worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays to Saturdays (typically 24 hours per week).

214.     Throughout his employment with Defendants, Plaintiff Trujillo was paid his wages by check.

215.     From approximately December 2013 until on or about March 2014, Defendants paid Plaintiff Trujillo $5.65 per hour for approximately 20 hours and $8.00 per hour for approximately 5 hours.

216.     From approximately March 2014 until on or about June 2016, Defendants paid Plaintiff Trujillo $5.65 per hour.

217.     Defendants never granted Plaintiff Trujillo a meal break or rest period of any kind.

218.     Plaintiff Trujillo was never notified by Defendants that his tips would be included as an offset for wages.

219.     Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Trujillo's wages.

220.     Defendants never provided Plaintiff Trujillo with a written notice, in English and in Spanish (Plaintiff Trujillo's primary language), of his rate of pay, employer's regular pay day,

and such other information as required by NYLL §195(1).

221.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Trujillo regarding overtime and wages under the FLSA and NYLL.

222.    Defendants required Plaintiff Trujillo to purchase "tools of the trade" with his own funds—including one bicycle, bike supplies, and bicycle maintenance.

*Plaintiff Roberto Velasquez Rodriguez*

223.    Plaintiff Velasquez was employed by Defendants from approximately June 2012 until on or about March 2013.

224.    Defendants ostensibly employed Plaintiff Velasquez as a delivery worker. However, Plaintiff Velasquez also was required to perform the non-delivery non-tip duties described above.

225.    Although Plaintiff Velasquez ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

226.    Plaintiff Velasquez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

227.    Plaintiff Velasquez's work duties required neither discretion nor independent judgment.

228.    From approximately June 2012 until on or about March 2013, Plaintiff Velasquez worked from approximately 10:00 a.m. until on or about 2:00 p.m. Mondays to Fridays (typically 20 hours per week).

229.    Plaintiff Velasquez was paid his wages by check.

230.    From approximately June 2012 until on or about March 2013, defendants paid Plaintiff Velasquez $5.00 per hour.

231.    Defendants never granted Plaintiff Velasquez a meal break or rest period of any kind.

232.    Plaintiff Velasquez was never notified by Defendants that his tips would be included as an offset for wages.

233.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Velasquez's wages.

234.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Velasquez regarding wages under the FLSA and NYLL.

235.    Defendants never gave  any notice to Plaintiff Velasquez in English and in Spanish (Plaintiff Velasquez's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

236.    Defendants required Plaintiff Velasquez to purchase "tools of the trade" with his own funds—including two bicycles, two helmets, and maintenance.

### Plaintiff Teodulo Moreno

237.    Plaintiff Moreno was employed by Defendants from approximately May 2011 until on or about August 2014.

238.    Defendants ostensibly employed Plaintiff Moreno as a delivery worker. However, Plaintiff Moreno also was required to perform the non-delivery non-tip duties described above.

239.    Although Plaintiff Moreno ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

240.    Plaintiff Moreno regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

241.     Plaintiff Moreno's work duties required neither discretion nor independent judgment.

242.     From approximately April 2012 until on or about August 2014, Plaintiff Moreno worked from approximately 6:00 p.m. until on or about 10:30 p.m. two days a week, from approximately 6:00 p.m. until on or about 10:00 p.m. two days a week, and from approximately 11:00 a.m. until on or about 10:00 p.m. on Sundays (typically 28 hours per week).

243.     Plaintiff Moreno was paid his wages by check.

244.     From approximately April 2012 until on or about December 2013, defendants paid Plaintiff Moreno $5.00 per hour.

245.     From approximately January 2014 until on or about August 2014, defendants paid Plaintiff Moreno $5.65 per hour.

246.     Defendants never granted Plaintiff Moreno a meal break or rest period of any kind.

247.     Plaintiff Moreno was never notified by Defendants that his tips would be included as an offset for wages.

248.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Moreno's wages.

249.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Moreno regarding wages under the FLSA and NYLL.

250.     Defendants did not give any notice to Plaintiff Moreno in English and in Spanish (Plaintiff Moreno's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

251.     Defendants required Plaintiff Moreno to purchase "tools of the trade" with his own funds—including three bicycles, one helmet, lights every 6 months, tires every 3 months, bike maintenance 3 times a year, a lock and chain, four pairs of shoes, and two vests.

*Plaintiff Elfego Hernandez Gomez*

252.     Plaintiff Hernandez has been employed by Defendants from approximately October 2015 until the present date.

253.     Defendants ostensibly have employed Plaintiff Hernandez as a delivery worker. However, Plaintiff Hernandez also has been required to perform the non-delivery non-tip duties described above.

254.     Although Plaintiff Hernandez ostensibly has been employed as a delivery worker, he has spent over 20% of every work day performing non-delivery work.

255.     Plaintiff Hernandez has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

256.     Plaintiff Hernandez's work duties have required neither discretion nor independent judgment.

257.     From approximately October 2015 until on or about October 2017, Plaintiff Hernandez worked at the 17th Street location from approximately 11:00 a.m. until on or about 3:00 p.m. four days a week and from approximately 11:00 a.m. until on or about 3:40 p.m. (typically 20 to 20.66 hours per week)

258.     From approximately October 2017 until the present date, Plaintiff Hernandez has worked from approximately 11:30 a.m. until on or about 2:30 p.m. Mondays through Fridays (typically 15 hours per week).

259.     Plaintiff Hernandez has been paid his wages by check.

260.    From approximately October 2015 until on or about December 2015, Defendants paid Plaintiff Hernandez $5.65 per hour.

261.    From approximately January 2016 until on or about December 2017, Defendants paid Plaintiff Hernandez $7.50 per hour.

262.    From approximately January 2018 until the present date, Defendants have paid Plaintiff Hernandez $8.65 per hour.

263.    Defendants never have granted Plaintiff Hernandez a meal break or rest period of any kind.

264.    Plaintiff Hernandez has never been notified by Defendants that his tips are being included as an offset for wages.

265.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Hernandez's wages.

266.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Hernandez regarding wages under the FLSA and NYLL.

267.    Defendants have not given any notice to Plaintiff Hernandez in English and in Spanish (Plaintiff Hernandez's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

268.    Defendants have required Plaintiff Hernandez to purchase "tools of the trade" with his own funds—including two bicycles, bicycle maintenance every three months, and three helmets.

*Plaintiff Agustin Morales*

269.    Plaintiff Agustin was employed by Defendants from approximately September 2012 until on or about February 2017.

- 33 -

270.    Defendants ostensibly employed Plaintiff Agustin as a delivery worker. However, Plaintiff Agustin also was required to perform the non-delivery non-tip duties described above.

271.    Although Plaintiff Agustin ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

272.    Plaintiff Agustin regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

273.    Plaintiff Agustin's work duties required neither discretion nor independent judgment.

274.    From approximately September 2012 until on or about February 2017, Plaintiff Agustin worked from approximately 4:00 p.m. until on or about 9:00 p.m. Mondays through Fridays (typically 20 hours per week).

275.    Plaintiff Agustin was paid his wages by check.

276.    From approximately September 2012 until on or about December 2013, defendants paid Plaintiff Agustin $5.00 per hour.

277.    From approximately January 2014 until on or about December 2015, defendants paid Plaintiff Agustin $5.65 per hour.

278.    From approximately January 2016 until on or about February 2017, defendants paid Plaintiff Agustin $7.50 per hour.

279.    Defendants never granted Plaintiff Agustin a meal break or rest period of any kind.

280.    Plaintiff Agustin was never notified by Defendants that his tips would be included as an offset for wages.

281.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Agustin's wages.

282.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Agustin regarding wages under the FLSA and NYLL.

283.   Defendants did not give any notice to Plaintiff Agustin in English and in Spanish (Plaintiff Agustin's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

284.   Defendants required Plaintiff Agustin to purchase "tools of the trade" with his own funds—including one bicycle, bicycle maintenance, and one basket.

*Plaintiff David Luna Perez*

285.   Plaintiff Luna was employed by Defendants from approximately October 2012 until on or about September 2017.

286.   Defendants ostensibly employed Plaintiff Luna as a delivery worker. However, Plaintiff Luna also was required to perform the non-delivery non-tip duties described above.

287.   Although Plaintiff Luna ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

288.   Plaintiff Luna regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

289.   Plaintiff Luna's work duties required neither discretion nor independent judgment.

290.   Throughout his employment with Defendants, Plaintiff Luna regularly worked in excess of 40 hours per week.

291.   From approximately October 2012 until on or about February 2014, Plaintiff Luna worked from approximately 11:00 a.m. until on or about 3:00 p.m. and from approximately 6:00 p.m. until on or about 10:00 p.m. Mondays through Thursdays, from approximately 11:00 p.m.

until on or about 3:00 p.m. on Fridays, and from approximately 5:00 p.m. until on or about 10:00 p.m. on Sundays (typically 41 hours per week).

292.    From approximately March 2014 until on or about February 2015, Plaintiff Luna worked from approximately 9:00 a.m. until on or about 3:00 p.m. and from approximately 6:00 p.m. until on or about 10:00 p.m. Mondays through Thursdays, from approximately 9:00 a.m. until on or about 3:00 p.m. on Fridays, and from approximately 5:00 p.m. until on or about 10:00 p.m. on Sundays (typically 51 hours per week).

293.    From approximately March 2015 until on or about December 2015, Plaintiff Luna worked from approximately 9:00 a.m. until on or about 2:00 p.m. Mondays through Fridays and from approximately 8:00 a.m. until on or about 2:00 p.m. on Sundays (typically 31 hours per week).

294.    From approximately January 2016 until on or about September 11, 2017, Plaintiff Luna worked from approximately 9:00 a.m. until on or about 2:00 p.m. Mondays through Fridays (typically 25 hours per week).

295.    From approximately January 2016 until on or about September 11, 2017, Plaintiff Luna worked from approximately 9:00 a.m. until on or about 2:00 p.m. Mondays through Fridays (typically 25 hours per week).

296.    Plaintiff Luna was paid his wages by check.

297.    From approximately October 2012 until on or about February 2014, defendants paid Plaintiff Luna $7.65 per hour.

298.    From approximately February 2014 until on or about December 2015, defendants paid Plaintiff Luna $9.00 per hour.

299.    From approximately January 2016 until on or about September 11, 2017, defendants paid Plaintiff Luna $11.00 per hour.

300.    Defendants never granted Plaintiff Luna a meal break or rest period of any kind.

301.    Plaintiff Luna was never notified by Defendants that his tips would be included as an offset for wages.

302.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Luna's wages.

303.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Luna regarding wages under the FLSA and NYLL.

304.    Defendants did not give any notice to Plaintiff Luna in English and in Spanish (Plaintiff Luna's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

305.    Defendants required Plaintiff Luna to purchase "tools of the trade" with his own funds—including one bicycle, bicycle maintenance, and one basket.

*Plaintiff Reginaldo Anibal Rojas*

306.    Plaintiff Anibal was employed by Defendants from approximately August 2016 until on or about March 13, 2018.

307.    Defendants ostensibly employed Plaintiff Anibal as a delivery worker.

308.    Plaintiff Anibal regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

309.    Plaintiff Anibal's work duties required neither discretion nor independent judgment.

310.    From approximately August 2016 until on or about March 13, 2018, Plaintiff Anibal worked from approximately 5:00 p.m. until on or about 10:00 p.m. Mondays to Fridays and from approximately 11:00 a.m. until on or about 9:00 p.m. on Saturdays (typically 35 hours per week).

311.    Throughout his employment with Defendants, Plaintiff Anibal was paid his wages by check.

312.    From approximately August 2016 until on or about September 2017, Defendants paid Plaintiff Anibal $7.50 per hour.

313.    From approximately September 2017 until on or about January 2018, Defendants paid Plaintiff Anibal $9.00 per hour.

314.    From approximately January 2018 until on or about March 1, 2018, Defendants paid Plaintiff Anibal $11.00 per hour.

315.    From approximately March 1, 2018 until on or about March 18, 2018, Defendants paid Plaintiff Anibal $8.65 per hour.

316.    Defendants never granted Plaintiff Anibal a meal break or rest period of any kind.

317.    Plaintiff Anibal was never notified by Defendants that his tips were being included as an offset for wages.

318.    Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Anibal's wages.

319.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Anibal regarding wages under the FLSA and NYLL.

320.    Defendants never gave any notice to Plaintiff Anibal in English and in Spanish (Plaintiff Anibal's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

321.    Defendants required Plaintiff Anibal to purchase "tools of the trade" with his own funds—including one bicycle and bicycle maintenance.

*Defendants' General Employment Practices*

322.    Defendants regularly have required Plaintiffs to work without paying them the proper minimum wage, overtime and spread of hours compensation.

323.    Defendants have maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work without paying them appropriate minimum wage, overtime and spread of hours compensation, as required by federal and state laws.

324.    At no time have Defendants inform Plaintiffs that they have reduced their hourly wage by a tip allowance.

325.    Defendants have failed to maintain a record of tips earned by Plaintiffs for the deliveries they have made to customers.

326.    Defendants have employed several Plaintiffs as delivery workers and have required them to provide their own locks, chains, helmets, and bicycles, and have refused to compensate them or reimburse them for these expenses.

327.    Defendants have required Plaintiffs to perform the jobs of multiple employees in addition to their primary responsibilities as delivery workers. These responsibilities have included the non-delivery, non-tip duties described above.

328. Plaintiffs' duties have not been incidental to their occupation as delivery workers, but instead have constituted entirely unrelated occupations with duties including the non-delivery, non-tip duties described above.

329. These Plaintiffs have been paid at the lowered tip-credited rate by Defendants; however, under state law Defendants have not been entitled to a tip credit because Plaintiffs' non-tipped duties have exceeded 20% of each workday (or 2 hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

330. New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

331. In violation of federal and state law as codified above, Defendants have classified Plaintiffs as tipped employees and have paid them at the tip-credited rate when they should have classified them as non-tipped employees and have paid them at the minimum wage rate.

332. Defendants have failed to post required wage and hour posters in the restaurant, and have not provided Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' lack of sophistication in wage and hour laws.

333. Upon information and belief, these practices by Defendants have been willfully done to disguise the actual number of hours Plaintiffs (and similarly situated individuals) have worked, and to avoid paying Plaintiffs properly for (1) the minimum wage, (2) overtime compensation and (3) for spread of hours pay.

334.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

335.    Defendants' unlawful conduct is intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and other similarly situated current and former delivery workers.

336.    Defendants have failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

338.    Plaintiffs bring their FLSA minimum wage, overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

339.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

340.     At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 class have been similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage and overtime at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek.

341.     The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

342.     Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

343.     Plaintiffs bring their New York Labor Law minimum wage, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

344.     The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

345.     There are questions of law and fact common to the Class including:

  a.   what proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b.   what were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c.   what were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d.   whether Defendants failed and/or refused to pay Plaintiffs the minimum wage at the premium rate within the meaning of the New York Labor Law;

e.   whether Defendants improperly deducted "shorts" from the Plaintiffs' wages; and

f.   at what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work;

346.   The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of wages and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

347.   The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

348.   The common questions of law and fact predominate over questions affecting only individual members.

349.   A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual

plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

350.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

351.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein

352.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants have had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

353.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

354.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

355.    Defendants have failed to pay Plaintiffs and the FLSA and Rule 23 class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

356.    Defendants' failure to pay Plaintiffs and the FLSA and Rule 23 class members at the applicable minimum hourly rate has been willful within the meaning of 29 U.S.C. § 255(a).

357.    Plaintiffs and the FLSA and Rule 23 class members have been damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA**

358.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

359.  Defendants, in violation of 29 U.S.C. § 207(a)(1), have failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

360.  Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation has been willful within the meaning of 29 U.S.C. § 255(a).

361.  Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE NEW YORK MINIMUM WAGE ACT**

362.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

363.    At all times relevant to this action, Defendants have been Plaintiffs' (and the FLSA and Rule 23 class members') employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants have had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

364.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs (and the FLSA and Rule 23 class members) less than the minimum wage.

365.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members') the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

366.     Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

367.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

368.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, have failed to pay Plaintiffs (and the FLSA and Rule 23 class members') overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

369.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members') overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

370.     Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**

**OF THE NEW YORK COMMISSIONER OF LABOR**

371.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

372.     Defendants have failed to pay Plaintiffs(and the FLSA and Rule 23 class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs'

spread of hours has exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

373.    Defendants' failure to pay Plaintiffs(and the FLSA and Rule 23 class members') an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours is willful within the meaning of NYLL § 663.

**374.**    Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

375.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

376.    Defendants have failed to provide Plaintiffs (and the FLSA and Rule 23 class members) with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

377.     Defendants are liable to each Plaintiff (and the FLSA and Rule 23 class members) in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

378.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

379.    Defendants have required Plaintiffs (and the FLSA and Rule 23 class members) to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, helmets, and lights further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35;

N.Y. Lab. Law §§ 193 and 198-b.

380.     Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(c)     Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(d)     Declaring that Defendants have violated the notice and recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs and the FLSA and Rule 23 class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs and the FLSA and Rule 23 class members;

(f)     Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the

amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and Rule 23 class members;

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs (and the FLSA and Rule 23 class members);

(j)     Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs and the FLSA and Rule 23 class members;

(k)     Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' and the FLSA and Rule 23 class members' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and the spread of hours wage order have been willful as to Plaintiffs  and the FLSA and Rule 23 class members;

(m)     Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread

of hours pay and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)     Awarding Plaintiffs and the FLSA and Rule 23 class members pre-judgment and post-judgment interest as applicable;

(p)     Awarding Plaintiffs and the FLSA and Rule 23 class members the expenses incurred in this action, including costs and attorney's fees;

(q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)     All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        April 26, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

/s/ Michael Faillace

By:     Michael A. Faillace [MF-8436]
        60 East 42nd Street, Suite 4510
        New York, New York 10165
        (212) 317-1200
        *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 6, 2017

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                              Teodulo Moreno

Legal Representative/ Representante        Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                               October 6, 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 14, 2015

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Roberto Velasquez Rodriguez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      14 de agosto de 2015

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 18, 2017

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Ricardo Trujillo

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      18 de octubre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———

Faillace@employmentcompliance.com

September 15, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                                    **Armando Vidal Ramirez**

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                                            15 de septiembre de 2017

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

March 14, 2018

BY HAND

To: Clerk of Court,

    I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                     Reginaldo Anibal Rojas

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                March 14, 2018

*Certified as a minority-owned business in the State of New York.*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

October 6, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                         Ramiro Torres Saenz

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:                     _____

Date / Fecha:                          October 6, 2017

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 6, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Misael Mendez

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           06 de octubre de 2017

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

September 19, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                   Juan Cosme Duran

Legal Representative / Abogado:  Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    September 19, 2017

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 16, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              <u>Jose Javier Rodriguez Robles</u>

Legal Representative / Abogado:    <u>Michael Faillace & Associates, P.C.</u>

Signature / Firma:

Date / Fecha:               <u>16 de octubre de 2017</u>

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 15, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Jorge Alberto Jimenez Lopez

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           15 de septiembre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 29, 2017

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Cedeno Minero Ignacio Israel

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     29 de septiembre de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

_____

Faillace@employmentcompliance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

September 14, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Esteban Morales

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:               Esteban Morales

Date / Fecha:                    14 de septiembre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

February 9, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                     Elfego Hernandez Gomez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      9 de febrero 2018

_Certified as a minority-owned business in the State of New York_

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 27, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Efrain Antonio

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                               27 de noviembre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

April 19, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          David Luna Perez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              19 de abril de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 15, 2017

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Daniel Guerrero

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           15 de septiembre de 2017

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 30, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                           Agustin Morales

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                                30 de enero 2018

*Certified as a minority-owned business in the State of New York*